BROWN, APPELLANT, *v.* BROWN, APPELLEE.

(No. CA83-06-040—Decided
February 21, 1984.)

*Mr. James Hoyt Brown, pro se.*
*Ruppert, Bronson & Chicarelli Co.,*
*L.P.A.,* and *Mr. Christopher J. Cornyn,*
for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Warren County.

The parties to this appeal were divorced in Tennessee in 1975, where custody of one child of the parties was given to plaintiff-appellant, Rebecca Gail Ware Brown, and defendant-appellee, James Hoyt Brown, was ordered to pay support. From the file before us, it appears that in the succeeding years these parties experienced considerable difficulty regarding payment of support and visitation.

The present action had its aegis on October 18, 1979, when appellant petitioned the Tennessee court under their Uniform Reciprocal Enforcement of Support Act to compel appellee, then residing in Warren County, Ohio, to pay support for their child. The case was thereupon transferred to the Court of Common Pleas of Warren County, Ohio, in accordance with the uniform Act, for further proceedings. A complaint was filed in that court and, on January 2, 1980, by agreement of counsel, appellee was ordered to pay the sum of $50 per week support through the Warren County Bureau of Support. The order further provided that "[d]efendant is granted visitation on Saturdays from 9:00 A.M. to 6:00 P.M., as a condition for making said weekly support payments."

The proceedings now under consideration began on December 21, 1982, when the Warren County Bureau of Support filed its affidavit in contempt in which it is alleged that appellee had failed to comply with the order of "the 21st day of December 1979 [*sic*]" and that, as of December 1982, appellee was in arrears in the amount of $725.87. The matter was submitted to a referee on January 19, 1983, and his report was filed on January 20, 1983. That report contains the following:

"The Defendant, James H. Brown, under oath, testified that he has not had any visitation with his child since the last Court order.

"The Court finds the Defendant not guilty and also finds that the Defendant is not in arrears as of January 14, 1983 as stated in the complaint filed by the Bureau of Support.

"The Court further finds that upon presentation of the facts heard today the 19th day of January, 1983, that there shall be no further support due to the Plaintiff as of this date, until the Defendant receives his proper visitation."

For the purposes of this review, we have not been favored with any transcript of the testimony taken before the referee; neither has any "agreed statement as the record on appeal" been prepared and submitted to us pursuant to App. R. 9(D). Thus, in our review we are confined to the findings of fact and conclusions of law made by the referee in his report. We are unaware as to who testified or whether any of the parties was represented by counsel in the referee's hearing.

On February 7, 1983, one James R. Lafevor, as attorney for appellant, who gave his address as Knoxville, Tennessee, filed objections to the referee's

report. Attached to these objections was counsel's affidavit to the effect that he was a legal aid attorney, that appellant met the qualifications for representation by the Legal Clinic, and that she could not afford to retain counsel in Ohio. He asked that he be allowed to proceed *pro hac vice* or that counsel be appointed for appellant in Ohio. Also attached to the objections was an extensive affidavit executed by appellant. Thereafter various other papers were also filed, including certified copies of Tennessee court records, all apparently connected with the objections to the referee's report.

From the notice given as to the date and time of the referee's hearing, according to a copy thereof in the files before us, it does not appear that such notice was sent to anyone but appellee.

On March 16, 1983, the assignment commissioners of the trial court notified both appellant and appellee that a hearing on the objections to the referee's report would be held on April 13, 1983. It is interesting to note that the notice of hearing was not sent to any attorney. The hearing was held as scheduled, and we have been furnished with a transcript of that hearing. From that transcript, it appears that the parties were the only persons present. The judge first asked appellant to state her position. When she finished with her narrative statement, the judge asked appellee if he had anything to say. When appellee finished his narrative statement, the judge asked appellant if she had any response. After the response, the court advised the parties that he would take the matter under advisement.

At no time during the course of the April 13, 1983 proceedings did the judge ask any questions of either party. Since there is no transcript or App. R. 9(D) statement of the *referee's* hearing, we do not know whether the statements made to the judge on April 13, 1983 by each party were in the form of testimony or were arguments of matters that had been testified to before the referee; neither do we know whether the judge accepted these statements as argument or as evidence. It appears that neither of the parties was placed under oath. Thus, in view of the judge's failure to explore or clarify any factual statement made by either party in his or her statement, it would appear that the judge was listening to arguments, not taking testimony. Under Civ. R. 53(E)(2), in considering objections to the report of the referee, "* * * the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself." If the court at the hearing on the objections to the referee's report intends to take additional evidence, certainly the parties should be notified so that they can be prepared. The notice of the hearing did not include any mention of the taking of additional testimony.

Nevertheless, the trial court did state in its decision that it "* * * feels the Referee was justified in this case in that there has been no visitation, no contact, nor any communication of any kind on the part of the father." Its conclusions were that the objections to the referee's report were overruled and that the decision, findings, and recommendations are fair and equitable.

From this judgment, appellant has perfected her appeal. Error is assigned that "the trial court erred in suspending the appellee's-father [*sic*] child support payments to appellant on the ground that appellee's visitation rights have been denied."

In view of our problem with what constitutes testimony, we proceed with our review on the basis of the findings and recommendations of the referee and the statements of the trial court in approving them. First, we note that this action originated via a transfer from the state of Tennessee under R.C. Chapter

3115, which is our Uniform Reciprocal Enforcement of Support Act. A support order was issued by the Tennessee court; and, under R.C. 3115.21(A), appellee had only two defenses to that order in the Ohio trial court, *i.e.*, that he was not the father of the child, and that the order was void, neither of which was advanced. The duty of the Ohio court was to enforce the Tennessee support order; and, it appears that the condition in the January 2, 1980 agreed order regarding visitation, which permitted appellee to avoid making support payments, was unauthorized.

R.C. 3115.21(B) provides:

"In an action under this chapter, after providing notice and holding a hearing, the court may *impound funds* that are paid to the court by the obligor in accordance with the support order upon which the action is based. *The impoundment of funds* is authorized only if the obligor submits proof and the court finds that the obligor has been continuously or repeatedly prevented by the person having custody of a child for whom the obligor owes a duty of support, as established by a support order, from exercising a right of visitation, as established by court order, with respect to the child." (Emphasis added.)

In light of the context in which it is used, we construe the phrase "support order" to refer to an order issued by the initiating court, here the Tennessee court.

The above-quoted statute does not authorize the forgiveness of past-due unpaid support, which is the gist of the second paragraph of the referee's report, but rather only authorizes the impoundment of funds under the conditions noted. The obligation to pay support still remains, and a finding that an obligor is not guilty of contempt of court for past failure to make regular support payments on the ground that visitation was denied is erroneous.

The last paragraph of the referee's

recommendations is likewise erroneous for the same reason. There is no authority, either in R.C. 3115.21 or in R.C. 3109.05, for the suspension of a support order because of the denial or interference with visitation rights. R.C. 3109.05 permits the modification of a support order under such circumstances, but it "* * * does not provide that the court may suspend an order of support as was done in this instance. The suspension of an order is not a modification thereof. * * *" *Foster* v. *Foster* (1974), 40 Ohio App. 2d 257, 266 [69 O.O.2d 250].

We, therefore, hold that appellant's assignment of error is well-taken.

We are impelled also to comment on another error, neither assigned nor briefed, which, in our opinion, would likewise justify a reversal. An appellate court is permitted to consider those errors not raised by an appellant. *Garrison Carpet Mills* v. *Lenest, Inc.* (1979), 65 Ohio App. 2d 251, 254 [19 O.O.3d 208]. "Plain error" is defined in *State* v. *Craft* (1977), 52 Ohio App. 2d 1, 7 [6 O.O.3d 1], as "* * * obvious error prejudicial to a * * * [party], neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. * * *" Just such a situation is apparent here.

R.C. 3115.16 sets forth the procedure to be followed when a responding court receives appropriate material from the initiating court. R.C. 3115.16(B) provides that "[t]he *prosecuting attorney* shall prosecute the case *diligently.* * * *" (Emphasis added.) R.C. 3115.16(C) goes on to provide that "[i]f the prosecuting attorney neglects or refuses to represent the obligee [appellant here], the county director of welfare may undertake the representation." The docket, journal entries, and original papers with which we have been

furnished pursuant to App. R. 10(B) indicate that appellant had appropriate legal representation during the original proceedings in this state up to the January 2, 1980 entry.

Diligent prosecution, however, does not end there. R.C. 3115.22(A) provides in part that "* * * [t]he court and prosecuting attorney of any county in which the obligor [appellee here] is present or has property have the same powers and *duties* to enforce the order as have those of the county in which it was first issued. * * *" (Emphasis added.) There is thus a duty to enforce any support order which might have been issued in Ohio as well as to obtain the initial issuance of that support order.

In the case before us, the record is devoid of any indication that appellant had any legal representation whatsoever during the course of the proceedings to enforce the support order issued on January 2, 1980. The Uniform Reciprocal Enforcement of Support Act was designed to take care of the multitude of problems that regularly arise regarding the support of children of divorced parents where the parties are separated geographically by state lines. Both Ohio and Tennessee are parties to the interstate compact which utilized this Act. The cooperation of members of the compact with each other is basic if the salutary public policy provisions of the Act are to be realized. The failure to provide legal representation to an obligee during all of the stages involved in carrying out the enforcement provisions of the Act is indeed "* * * a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. * * *" *State* v. *Craft, supra,* at 7.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings not inconsistent with this decision.

Costs to be taxed in compliance with App. R. 24.

And the court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty.

*Judgment reversed and*
*cause remanded.*

HENDRICKSON, P.J., JONES and ZIEGEL, JJ., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.