SHANYFELT, Appellant,

v.

SHANYFELT, Appellee.

[Cite as *Shanyfelt v. Shanyfelt* (1997), 118 Ohio App.3d 243.]

Court of Appeals of Ohio,
Third District, Crawford County.

No. 3–96–18.

Decided Feb. 13, 1997.

244

*E.R. Wead,* for appellant.

*Mona L. Cook,* for appellee.

SHAW, Judge.

This matter is on appeal from a decision of the Court of Common Pleas of Crawford County, Ohio, in which defendant-appellant, Thomas A. Shanyfelt, was ordered to pay child support and alimony arrearages to plaintiff-appellee, Anna M. Shanyfelt.

Plaintiff and defendant were married in October 1970. The following December, a child was born to the couple. Five years later, in 1975, plaintiff and defendant dissolved their marriage in the Court of Common Pleas of Crawford County, Ohio. The terms of the separation agreement provided that plaintiff would receive custody of the child and that defendant would pay $75 per week. This amount constituted $50 for child support and $25 for alimony. The alimony payments terminated upon plaintiff's completion of nursing school and the ability to be self-supporting or her remarriage.

Despite the dissolution, the couple cohabitated in Findlay, Ohio, for twenty-one months between 1976 and 1978. After 1978, the couple again separated and lost contact with each other. When plaintiff left Findlay, the child accompanied her. Although plaintiff never completed her education, she did remarry in 1980.

In 1983, plaintiff instituted a Uniform Reciprocal Enforcement of Support Act ("URESA") action from California to the Common Pleas Court of Wood County requesting payment of child support. Alimony arrearages were not addressed in this URESA proceeding. Initially, the court determined that a portion of defendant's support obligation was in arrears and was to be paid to the Wood

County Bureau of Support. However, suspension of a part of these payments was also ordered, since defendant had reason to believe that plaintiff and her new husband were adopting the child, thus relieving defendant of additional support obligations. The adoption never occurred, and once defendant was notified of this fact, the support obligations were again due.

Thereafter, a dispute regarding defendant's visitation of the child arose. The Wood County Court of Common Pleas ordered that support monies paid by defendant be placed into an escrow account pending resolution of the matter. Because the parties were unable to settle the issue, the court suspended defendant's support obligations until acceptable visitation occurred. Ultimately, no visitation occurred, and after a failure of continued action by plaintiff, California requested that the Wood County Prosecutor's Office dismiss the action. The Wood County court complied with the prosecutor's request and returned to defendant the funds placed in escrow. These findings were never appealed.

Upon plaintiff's return to Ohio in 1995 and with representation from the Crawford County Child Support Enforcement Agency, plaintiff moved for a lump sum payment of child support and alimony arrearages in the Common Pleas Court of Crawford County. After a hearing on the merits, the court granted plaintiff's motion and awarded her $7,384.24. This amount represented $3,359.24 for all child support arrearages and $4,025 for partial alimony arrearages. From this decision, defendant appeals. The following are defendant's listed assignments of error:

"I. The Court of Common Pleas of Crawford County, Ohio erred in granting judgment for the same judgment as was previously granted in the Court of Common Pleas of Wood County, Ohio because it lacked jurisdiction to revive the judgment. [*Sic.*]

"II. The trial court erred in not finding that the parties had complied with all the requirements for a common law marriage and the award for alimony of the petitioner wife should be denied."

██ Defendant's first assignment of error focuses on the jurisdiction of the Crawford County court to hear the matter addressed by the Wood County court regarding defendant's child support obligations. Specifically, the question is whether the Crawford County court was barred from granting judgment on the terms of the original separation agreement when the Wood County court had previously entered judgment on the same issues in a URESA action.

Our review of the Crawford County court's judgment entry is on an abuse-of-discretion standard, since this is a matter regarding child support. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1031–1031. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or

unconscionable, and is more than an error in law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In support of the first assignment of error, defendant concedes that the judgment from the Wood County court is dormant. Yet his argument continues with the assertion that the Crawford County court entered an incorrect judgment because it considered a fact previously determined by the Wood County court. Further, defendant maintains that the Crawford County court lacked jurisdiction to revive the judgment of the Wood County court, since R.C. 2325.15, dealing with revivor of dormant judgment, was not followed.

In its judgment entry, the Crawford County court determined that the Wood County judgment entry was enforceable. The rationale relied upon was that a viable debt remained despite the fact that the judgment was dormant and unrevived. However, this view of support obligations is inconsistent with that taken by the Supreme Court of Ohio. As stated in *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 135–136, 637 N.E.2d 882, 886:

"[W]e have consistently held that support obligations are not debts in the ordinary sense of that word * * * [or] within the meaning of that term in Section 15, Article I of the Ohio Constitution."

In short, support orders are obligations which arise by operation of law and are a personal duty owed to the former spouse, child, and society. *Id.* at 135, 637 N.E.2d at 885–886.

As a result, error was committed by the Crawford County court when it relied on the child support findings of the Wood County court regardless of the court's revival and dormancy of judgment debts rationale. This is because the Crawford County court had the authority to make determinations on the parties' separation agreement independent from the Wood County court's URESA judgment.

The purpose of URESA is to "improve and extend by reciprocal legislation the enforcement of duties of support" across state lines. R.C. 3115.01(A); *In re Byard* (1996), 74 Ohio St.3d 294, 296, 658 N.E.2d 735, 737. A URESA action is intended to be a separate, independent proceeding to enforce a support obligation, without foreclosing other remedies available to an obligee. R.C. 3115.02; *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 84, 12 O.O.3d 88, 89–90, 388 N.E.2d 1229, 1231–1232. However, other options exist to enforce support obligations. These include criminal prosecution under R.C. 2919.21 or modification of support orders in a dissolution's separation agreement pursuant to R.C. 3105.65(B). This latter enforcement option was utilized by plaintiff and applied by the Crawford County court when it rendered judgment in this case. In pertinent part, R.C. 3105.65(B) states:

"The court has full power to enforce its decree and retains jurisdiction to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of the residential parent and legal custodian of the children, to child support, and to visitation."

Therefore, because URESA does not substitute other remedies and the Crawford County court has "full power to enforce its decree," plaintiff's URESA action in the Wood County court had no impact on her ability to bring an action in Crawford County on the separation agreement for independent consideration by the court.

Additionally, any determination of support by the Wood County court is unaffected by subsequent court proceedings which modifies such support orders, unless the subsequent order specifically provides for an alteration in the URESA payment. R.C. 3115.28; *Casale v. Casale* (1989), 61 Ohio App.3d 118, 121, 572 N.E.2d 192, 194–195. Thus, although the Wood County court issued its findings regarding the support obligations of defendant, we hold that the Crawford County court is free to consider independently the terms of the separation agreement and enter its own findings.

Furthermore, several of the Wood County court's determinations were in error, which makes a subsequent court's reliance upon those findings in error. In this case, the only action pursued in the Wood County court was according to URESA authority, and neither party requested modification of the separation agreement. According to R.C. 3115.27, the amount of support ordered in a URESA action must conform to that amount determined in the separation agreement adopted by the original court. Thus, the Wood County court had the ability to either enforce or deny enforcement of the agreement's support obligation, but not to modify the terms of the support payments.

Moreover, the Wood County court was without statutory authority to refund funds placed in escrow and suspend defendant's support payments contingent upon visitation with his child. The statutory scheme of URESA confers subject matter jurisdiction over the sole issues of paternity and support. *Byard*, 74 Ohio St.3d at 296, 658 N.E.2d at 737. Related matters such as visitation and custody are not within a court's purview. *Id.* at 297, 658 N.E.2d at 737–738. However, in the 1984 version of URESA, a provision did exist which permitted support funds to be impounded because of the obligee parent's interference with the obligor's right to visitation. R.C. 3115.21(B).[1] The provision read as follows:

---

1. This provision was modified in 1987 to allow a court to suspend already established visitation rights until the parent who owes the support and has willfully failed to provide that support provides it. R.C. 3115.21(B).

"In an action under this chapter, after providing notice and holding a hearing, the court may impound funds that are paid to the court by the obligor in accordance with the support order upon which the action is based. The impoundment of funds is authorized only if the obligor submits proof and the court finds that the obligor has been continuously or repeatedly prevented by the person having custody of a child whom the obligor owes a duty of support, as established by a support order, from exercising a right of visitation, as established by court order, with respect to the child."

■ Yet while the court had the authority to impound the support payments, suspension of such payments was not permitted. No language within R.C. 3115.21 provided for suspension of a support order, or forgiveness of past-due unpaid support, due to a denial or interference with visitation rights. *Brown v. Brown* (1984), 16 Ohio App.3d 26, 29, 16 OBR 28, 30–31, 474 N.E.2d 613, 616–617. Likewise, this perspective was consistent with the child support provisions of the 1984 version of the Revised Code. If visitation rights were denied, a support order was permitted to be modified. R.C. 3109.05; *Brown, supra*, at 29, 16 OBR at 30–31, 474 N.E.2d at 616–617. On the other hand, suspension of a support order was not considered a modification and, thus, suspension was prohibited. *Id.*

Given the problems with relying on the Wood County court's judgment entry, the support amount calculated by the Crawford County court is erroneous. Thus, the amount of child support defendant owes must be independently recalculated in view of these determinations. When calculating the new support obligation amount, a parent's obligation to provide child support until the child reaches the age of majority, R.C. 3109.01; 3109.05(E), and the fact that a child's emancipation and subsequent termination of the support order do not discharge a support obligation, R.C. 3113.21(M)(1); *Cramer*, 70 Ohio St.3d at 134, 637 N.E.2d at 885. should be relevant considerations.

In sum, we find that the Crawford County court did not err when it rendered a judgment according to the separation agreement created by the parties when dissolving their marriage. However, the matter of determining child support arrearages must be remanded to the Crawford County court for proceedings consistent with this opinion. To this extent only, defendant's first assignment of error is sustained.

■ Defendant's second assignment of error addresses the propriety of the alimony payments the Crawford County court ordered due to plaintiff. Specifically, defendant contends that the trial court erred in awarding alimony pursuant to the separation agreement following the remarriage of plaintiff and defendant in a common-law marriage. Appellate review of the trial court's actions regarding issues of this nature is on an abuse-of-discretion standard. *Blakemore* at syllabus.

In reaching its decision to award plaintiff the alimony arrearages, the trial court considered a number of factors. First, the court looked to the October 1975 dissolution document, which was never modified. This document required defendant to pay plaintiff weekly until set conditions occurred, thereby ending the agreed payment schedule. Second, the trial court found that the parties were not in a common-law marriage and that plaintiff's remarriage in 1980 eliminated defendant's need to continue to pay alimony. Thus, the court concluded that defendant owed alimony arrears from 1975 to 1980. Third, the court determined that the alimony arrearage should be reduced. This reduction would reflect the period of time in which the parties cohabitated and defendant provided support for plaintiff, so that defendant did not make duplicate sustenance alimony payments.

Although we find no error in the trial court's reasoning to reduce plaintiff's requested amount of alimony arrearages, and therefore decline to address the common-law marriage issue, we do find error in the court's determination of the amount due. The trial court's own findings were that defendant and plaintiff cohabitated for twenty-one months. Yet in determining the number of weeks defendant was to have paid alimony, the court essentially concluded that the cohabitation period was sixteen months.[2] The decision to utilize the sixteen-month figure is inadequately explained by the court. Thus, the trial court's alimony arrearage order should be modified to reflect the twenty-one-month time period in which the parties cohabitated. To this extent only, defendant's second assignment of error is sustained, and the matter is remanded to the Crawford County court for proceedings consistent with this opinion.

In sum, we find that defendant's assignments of error are sustained to the extent noted above. The decision of the Court of Common Pleas of Crawford County, Ohio, is affirmed in part and reversed in part, and the matter is remanded to that court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HADLEY, P.J., and THOMAS J. BRYANT, J., concur.

---

2. This sixteen-month figure is arrived at in the following manner:
   Plaintiff's calculated alimony arrearage and requested alimony lump-sum payment is $5,660. The total alimony arrearage granted was $4,025. The difference ($1,635) divided by weekly payments of $25 constitutes a period of approximately sixty-five weeks, or sixteen months.