[Cite as *Baker v. Baker*, 2013-Ohio-1816.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

DANIEL L. BAKER

      Plaintiff-Appellant

v.

JUDITH L. BAKER

      Defendant-Appellee

Appellate Case No.   25429

Trial Court Case No.   92-DR-97

(Civil Appeal from Common Pleas
Court, Domestic Relations)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 3rd day of May, 2013.

. . . . . . . . . . .

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

ELIZABETH J. HENLEY, Atty. Reg. No. 0034207, Talbott Tower, Suite 1205, 131 North Ludlow Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Daniel Baker, appeals from a decision and entry overruling

his motion to emancipate and/or request to modify child support. Daniel contends that the trial

court erred in failing to emancipate the parties' adult son, Brian Baker.[1] In addition, Daniel contends that the trial court erred in failing to equitably modify his support obligation in light of Brian's own earnings and benefits.

{¶ 2}     We conclude that the trial court did not abuse its discretion in failing to emancipate the parties' adult son who has developmental disabilities. There is evidence in the record supporting the trial court's decision, and the decision was not unreasonable. We further conclude that the trial court did not abuse its discretion in failing to equitably modify Daniel's support in view of Brian's earnings and benefits. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 3}     Daniel and Judith Baker were divorced in August 1992, and Daniel was ordered to pay child support. In 2001, Daniel filed a motion seeking emancipation of the parties' adult child, Brian, who was born in May 1982. Brian has had developmental disabilities since birth due to oxygen deprivation. The trial court held hearings on the issue in 2003, and heard testimony from Dr. Kathleen Burch, Daniel, Judith, and Todd Jordan, a youth employment specialist with Goodwill Industries.

{¶ 4}     Dr. Burch had met with both parents and Brian, and had given Brian various psychological tests. According to Dr. Burch, Brian had a verbal IQ of 76, a performance IQ of 67, and a full-scale IQ of 69. Brian's scores in the area of analyzing speech sounds and decoding oral language were average or high average, but when thinking about what he had heard or in

---

[1] For purposes of convenience, we will refer to the parties by their first names.

reasoning about it, Brian did much worse, consistent with an individual "who is in the borderline to mild M R range."  Brian  also had significant learning disabilities in math, and could not do his own financial planning and management.

{¶ 5}    At the time of Dr. Burch's testimony, Brian was not employed.  Dr. Burch indicated that becoming productive and employed should be a priority for Brian.   Dr. Burch also indicated that Brian should be able to live independently, except in the area of financial management.

{¶ 6}    Following Dr. Burch's testimony, the hearing was continued for several months.  The court then heard testimony from Daniel, Judith, and Jordan in March 2004.   By that time, Brian had been employed as a bagger with Kroger for five or six months, at a pay rate of $5.80 per hour.   Typically, Brian worked 22 to 32 hours per week, and did not have benefits.   Jordan had coached Brian in applying for the job and had attended the job interview with him.

{¶ 7}    At the time of the March 2004 hearing, Brian was also attending Sinclair Community College, and had passed developmental reading after taking it twice.   In addition, Brian had taken developmental math twice but had not passed it, and was involved in his third attempt to pass developmental English.

{¶ 8}    Judith testified that Brian lived with her, and that she did not feel he was capable of living on his own, because he could not afford to take care of his health and housing needs.   She also did not think Brian was capable of managing his money.   Judith additionally discussed problems Brian had with managing his diabetes, which primarily related to record-keeping and inattentiveness in ordering test strips.

{¶ 9}    Daniel testified that Brian was capable of managing his diabetes, and that Brian

had experienced no medical emergencies. Daniel also believed that Brian was capable of living on his own, but chose to live with his mother. According to Daniel, Brian was able to balance work, attending school, his diabetes, and his outside activities.

{¶ 10} Both parents carried Daniel on their health insurance, but it was unclear whether Brian could be retained on his parents' policies if he were emancipated. Daniel's gross income was approximately $192,326, and Judith's gross income was about $55,401.

{¶ 11} The trial court concluded that Brian was a person described in *Castle v. Castle*, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984). The court noted that the issue was not whether Brian could live in an apartment with some assistance, but was whether he now, or in the near future, could become self-supporting. In this regard, the court noted that Brian's job was provided through special assistance and charitable organizations, and that Brian could not compete on his own in the job market. The court, therefore, ordered that Brian should not be emancipated, and that the existing order of child support, paid by Daniel, should continue at the rate of $800 per month.

{¶ 12} Subsequently, in June 2010, Daniel filed a motion to emancipate Brian or to modify child support. The motion was based on a change of circumstances, including the fact that Brian had been employed at Kroger for five and a half years, had been employed for the past four years as a full-time employee with benefits, including medical coverage, and had been promoted to cashier three years previously.

{¶ 13} In February 2011, a magistrate held a hearing on the motion, and received testimony from Brian, Judith, and Daniel. At that time, both parents had retired and Brian was no longer on his mother's health insurance. However, he was a full-time employee at Kroger

and had benefits, including medical and dental insurance, sick leave, and vacation leave. Brian had worked as a bagger for three years, and was then promoted to cashier, at a rate of $10.60 per hour. Brian was employed as a cashier for four years, until the fall of 2010, when he was suspended for four weeks based on an incident involving a customer who had stolen groceries. After filing a successful grievance, Brian was reinstated at Kroger as a cashier. However, he was demoted to the position of restock front end clerk about a month later, after an incident in which he gave incorrect change, and another in which he failed to notice that a customer's credit card had not registered. Brian's pay rate after the demotion was $9.60 per hour. Brian was also told that if he "messed up again," he would be terminated. February 25, 2011 Hearing Transcript, p. 37. In the year 2009, which was prior to the demotion, Brian earned $17,252.

{¶ 14}    During 2010, Brian also had an issue with his blood sugar. He was in the intensive care unit of the hospital for three days, and was off work for a total of a week and a half. The testimony indicated that Brian can take readings and give himself insulin injections four times a day, but he still has occasional issues with obtaining new medicine at the last minute.

{¶ 15}    In the fall of 2010, Brian again began attending Sinclair Community College. He was admitted under a "fresh start" program to clear the previous bad grades and improve his grade point average. This involved retaking the same classes he had previously taken, including developmental reading. At the time of the hearing, Brian's G.P.A. was 1.5, and he needed to achieve a 2.0 to stay enrolled at Sinclair. Brian also had encountered issues with overdrawing his bank account, but that problem had been mostly resolved by providing Brian with online access to his bank account so that he or his mother could check the balance.

{¶ 16}    Again, the parents disagreed about whether Brian should be emancipated.

Daniel testified that Brian had made substantial progress, and was mature enough to support himself, as many people do who work at Kroger in the same classification. Conversely, Judith indicated that nothing had changed regarding Brian's cognitive abilities, and that Brian was back where he had started at his job, due to issues that had occurred.

{¶ 17} As was noted, both parents were retired at the time of the hearing. Daniel was receiving about $82,596 from four retirement income sources, and was paying about $2,884 per year for Brian's insurance coverage through the Ohio Police and Fire Pension Fund. Judith received approximately $47,084 from the Ohio Public Employees Retirement Fund and Social Security. Daniel indicated that he did not know if Brian would be covered by his insurance if he were emancipated.

{¶ 18} After hearing the testimony, the magistrate concluded that Brian should not be emancipated. The magistrate noted that no expert testimony was presented and that the evidence was anecdotal. Furthermore, although some circumstances had changed, the primary circumstances had not. Accordingly, the magistrate reduced Daniel's child support from $800 to $644 per month, effective as of the date of filing of Daniel's motion. Because this would result in an overpayment of support, the magistrate ordered that the support amount be $600 per month until the overpayment was eliminated.

{¶ 19} Daniel subsequently filed objections to the magistrate's decision. After considering the objections, the trial court sustained several of the objections and overruled others. The trial court agreed that Brian should not be emancipated.

{¶ 20} The trial court also noted that Brian had trouble managing his funds and was not actively contributing to his own support. However, since the evidence indicated that Brian was

paying $50 per month for his cell phone, the court adjusted the child support downward to $594 per month to account for this fact. The court also agreed with Daniel that the repayment amount was inequitable. Accordingly, the court ordered Judith to repay the overpayment at a rate of $119 per month. In addition, the court held that if Daniel failed to provide medical insurance for Brian, Daniel would be required to pay $531 per month for so long as there was an overpayment, and $650 thereafter, together with cash medical support in the amount of $82 per month.

**{¶ 21}** Daniel appeals from the judgment of the trial court.

### II. Did the Trial Court Err in Failing to Emancipate Brian?

**{¶ 22}** Daniel's First Assignment of Error states that:

The Trial Court Erred in Failing to Emancipate the Parties' 30 year old son.

**{¶ 23}** Under this assignment of error, Daniel contends that Brian's circumstances are significantly different from those of the child involved in the *Castle* decision, and do not warrant continuation of financial support. In this regard, Daniel stresses that in the original decision in 2004, the trial court relied on the fact that Brian was not treated like other Kroger employees, was unlikely to be given full-time hours, and did not have the full range of employee benefits as a result of his employment. Daniel notes that Brian does have full-time employment, including health insurance, and earns more than the basic combined child support obligation for both parents ($13,597.67).

**{¶ 24}** We review child support orders for abuse of discretion. *Blacker v. Blacker*, 2d Dist. Montgomery No. 20073, 2004-Ohio-2193, ¶ 18, citing *Shanyfelt v. Shanyfelt*, 118 Ohio App.3d 243, 246, 692 N.E.2d 642 (3d Dist.1997). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable,

arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25} In *Castle*, the Supreme Court of Ohio held that:

> The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority. *Castle*, 15 Ohio St.3d at 279, paragraph one of the syllabus, 473 N.E.2d 803.

{¶ 26} The court additionally held in *Castle* that a domestic relations court retains jurisdiction to continue or modify support payments for "mentally or physically disabled" children. *Id.* at paragraph two of the syllabus. The holding in *Castle* has been codified in R.C. 3119.86(A)(1)(a).

{¶ 27} In arguing that Brian should be emancipated, Daniel focuses on the fact that the child involved in *Castle* had "a mental age of five years, is attending a special school on a full-time basis and will never be able to live by herself due to the special care she requires." *Id.* at 280. Daniel contrasts this with Brian's situation of having a full-time job and being capable of self-support.

{¶ 28} In our opinion, Daniel's argument is too simplistic. The very nature of mental or physical disabilities means that the decision in each case will be fact-intensive. The fact that *Castle* involved a person with a mental age of five does not mean that this is the standard for gauging the effect of mental disabilities.

**{¶ 29}** As was noted, the trial court's decision in 2004 focused on whether Brian could become self-supporting then or in the near future. Among the factors mentioned was that Brian could not compete on his own in the job market. The testimony from the psychologist in 2004 indicated that Brian is in the first percentile rank of IQ, which means that 99 percent of the population has a higher score. In addition, the psychologist stated that Brian's potential to complete a course of study at Sinclair was very, very low. No further psychological evaluation or evidence was submitted in 2011, and Brian's mother testified that nothing had changed regarding Brian's cognitive abilities.

**{¶ 30}** In addition, even though Brian had returned to school, his grades remained extremely poor and he was again in danger of failing out. This occurred despite the fact that Brian, himself, attributed his earlier failure to the fact that he did not take school as seriously then. In reality, Brian's prognosis for being able to successfully complete a program of study is, as Dr. Burch indicated, very low.

**{¶ 31}** We also note that in the year before the hearing, Brian had a serious problem with diabetes that caused hospitalization, and he was demoted from the cashier's position because he committed too many errors. Thus, the record contains evidence supporting the conclusion that Brian should not be emancipated.

**{¶ 32}** To support his argument, Daniel relies on *Charlton v. Charlton,* 11th Dist. Geauga No. 95-G-1921, 1995 WL 815357 (Dec. 15, 1995). In *Charlton*, a referee had issued a report recommending that child support be terminated. The decision was based on the fact that although the child's disability continued, her yearly income, plus her social security disability benefits, exceeded the parents' total child support obligation. *Id.* at *1. On appeal, the

Eleventh District Court of Appeals affirmed, concluding that the child's earnings and continued employment "provide sufficient bases to support the trial court's conclusion that [the child] is capable of self-support." *Id.* at *4.

**{¶ 33}** There was very little discussion in *Charlton* of anything other than the money earned by the adult child. Accordingly, it is difficult to equate that situation with the case at hand, where other significant circumstances were considered.

**{¶ 34}** As support for her position that Brian should not be emancipated, Judith relies on our prior decision in *Blacker,* 2d Dist. Montgomery No. 20073, 2004-Ohio-2193. In *Blacker*, the trial court held that:

" * * * [The child] Heath suffers from neurological brain damage. He has significant mental and physical disabilities. Even though he has graduated from high school and is employed, albeit as a grocery store bagger, he is not able to support himself at this time[.] The court finds that Heath is making progress toward self-sufficiency .... Until that time, child support shall continue subject to further order of this Court." *Id.* at ¶ 28, quoting from the Trial Court Decision and Judgment, pp. 3-4.

**{¶ 35}** We affirmed the trial court, stating that:

We agree that Heath's disabilities are not as profound as the disabilities suffered by the child in *Castle*. Heath earns a modest income, and may be able to earn more as he grows in age and experience. However, and at this time, the record shows significant defects in relation to the needs that a self-sufficient life imposes, even for young persons of Heath's age. We cannot find that the trial

court abused its discretion when it ordered Bradley Blacker's duty of support to continue; that is, that the court's attitude in the matter was unreasonable, arbitrary or unconscionable. *Id.* at ¶ 31, citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{¶ 36}** Similarly, in *Johnson v. Johnson*, 2d Dist. Montgomery No. 11779, 1990 WL 78586 (June 8, 1990), we were required to affirm the trial court because the testimony was "more than sufficient" to support the trial court's determination that a child was not quite ready for independent care, "even though another fact finder might have found differently." *Id.* at *2.

**{¶ 37}** As was noted, the decisions in these cases are fact-intensive, and the trial court did have the opportunity to view the witnesses, including Brian. While we may have come to a different conclusion, there is evidence in the record supporting the trial court's decision, and the decision was not unreasonable. Thus, we cannot say that the court abused its discretion.

**{¶ 38}** Daniel's First Assignment of Error is overruled.

### III. Did the Trial Court Err in Failing to Equitably Modify Daniel's Support Obligation?

**{¶ 39}** Daniel's Second Assignment of Error is as follows:

The Trial Court Erred in Failing to Equitably Modify Appellant's Support Obligation in Light of Brian's Own Earnings and Benefits.

**{¶ 40}** Under this assignment of error, Daniel contends that the trial court should have accounted for Brian's earnings by reducing the support order, by discontinuing the requirement of providing health insurance, or by changing the allocation of the yearly tax deduction – or by applying some combination of these remedies.

**{¶ 41}** "We review the trial court's child-support modification for an abuse of discretion." (Citation omitted.) *Lenoir v. Paschal*, 2d Dist. Montgomery No. 23732, 2010-Ohio-2922, ¶ 5.

**{¶ 42}** "In any action or proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order * * *, the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." R.C. 3119.03. Despite the presumption, R.C. 3119.22 allows the court to deviate from this amount, "if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child." The factors listed in R.C. 3119.23 include:

(A) Special and unusual needs of the children;

(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

(C) Other court-ordered payments;

(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through

the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

(F) The financial resources and the earning ability of the child;

(G) Disparity in income between parties or households;

(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K) The relative financial resources, other assets and resources, and needs of each parent;

(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M) The physical and emotional condition and needs of the child;

(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

(O) The responsibility of each parent for the support of others;

(P) Any other relevant factor.

{¶ 43}    In the case before us, the trial court adjusted Daniel's monthly support obligation downward by $50 to account for the fact that Brian pays for his cell phone bill.   The court did not otherwise take into account the $17,422 in earnings that Brian had, for example, in 2009.[2]

{¶ 44}    Although we may have reached a different conclusion on the facts, we cannot say that the trial court abused its discretion in ordering only a $50 downward adjustment. Although Brian earned a substantial amount of income, the trial court could also have chosen to adjust the support amount upward, based on the fact that Daniel benefitted from sharing household expenses with his current wife, the relative financial assets and resources of each parent, and Judith's in-kind contributions, including her direct payments for Brian's schooling. See R.C. 3119.23(H), (K), and (J).   For example, Judith's financial disclosure statement indicates that her investment accounts total approximately $42,000.   See Defendant's Ex. G, submitted at the February 25, 2011 Hearing.   In comparison, Daniel's Amended Affidavit of Financial Disclosure indicates that his investment accounts contain about  $403,000.   Doc. #164, p. 3.[3]   Accordingly, the trial court did not act unreasonably, arbitrarily, or unconscionably by failing to make a further downward adjustment for Brian's income.

{¶ 45}    The trial court also did not abuse its discretion by failing to end Daniel's

---

[2]   Since Brian was demoted in the fall of 2010, and was earning a dollar less per hour, his yearly income would likely be less after 2009.   The parties did not submit 2010 tax returns for Brian.

[3]   Based on the testimony at the hearing, the correct amount for Daniel's investment accounts was actually $506,136.

insurance obligation. Brian had health insurance with Kroger, but that coverage would end if Brian lost his job – which was a possibility, according to the testimony. Daniel also could not assure the court that he would be able to reinstate Brian's insurance with the Ohio Police and Fire Pension Fund if Brian were removed from the insurance. Brian's medical expenses for insulin, alone, amount to approximately $530 per month. In addition, Brian had been hospitalized for several days during 2010. The expense for the health insurance (about $240 per month) is minimal compared to Daniel's income and assets, and compared to the financial damage that could ensue if Brian does not have health insurance.

{¶ 46} Finally, regarding the tax deduction, R.C. 3119.82 requires trial courts to designate which parent may claim children who are subjects of support orders as dependents for purposes of the federal income tax. R.C. 3119.82 further provides that:

> If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax

credit, and any other relevant factor concerning the best interest of the children.

**{¶ 47}** Decisions on tax exemptions are within the discretion of the trial court and are reviewed for abuse of discretion. *In re Custody of Harris,* 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶ 55 (2d Dist.). (Citations omitted.) After reviewing the record, we find no abuse of discretion.

**{¶ 48}** In 2004, the trial court divided the tax exemption between the parents, with each parent taking the exemption in alternating years. After the 2011 hearing, the magistrate found no basis for changing the tax exemption. The trial court overruled Daniel's objection to this finding, noting that the parties had submitted evidence only as to gross income, and had provided no evidence about taxable income. Because this is a matter of discretion, the trial did not act unreasonably, arbitrarily, or unconscionably in refusing to change the established practice. *Compare Malloy v. Malloy*, 3d Dist. Logan No. 8-08-15, 2009-Ohio-1918, ¶ 8 (noting that the trial court did not abuse its discretion in dividing tax exemptions equitably, which R.C. 3119.82 allows, where neither side presented additional evidence or arguments on the point).

**{¶ 49}** Accordingly, Daniel's Second Assignment of Error is overruled.

### IV. Conclusion

**{¶ 50}** Both of Daniel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Richard Hempfling
Elizabeth Henley
Hon. Timothy D. Wood