[Cite as *Matlock v. Matlock*, 2019-Ohio-2131.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| OMARI N. MATLOCK | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28278 |
| | : | |
| v. | : | Trial Court Case No. 2007-DR-858 |
| | : | |
| BRANDI J. MATLOCK, nka | : | (Domestic Relations Appeal) |
| CHANDLER | : | |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of May, 2019.

. . . . . . . . . . .

MARTIN A. BEYER, Atty. Reg. No. 0060078, 204 South Ludlow Street, Suite 204, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

KENT J. DEPOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on Omari Matlock's appeal from a trial court judgment reducing the child support paid by his ex-wife, Brandi Matlock, n/k/a Chandler.[1] In a single assignment of error, Omari contends that the trial court abused its discretion by reducing Brandi's child support.

{¶ 2} We conclude that the trial court abused its discretion in failing to find that Brandi was voluntarily underemployed. Consequently, this matter will be reversed and remanded to the trial court for a hearing on the amount of income that should be imputed to Brandi for purposes of calculating child support.

## I. Facts and Course of Proceedings

{¶ 3} The parties in this case were divorced in February 2008, and Brandi was designated residential parent and legal custodian of their two children, N.M. (born in 1999), and B.M. (born in 2005). Omari was ordered to pay child support of $269 per month for each child.

{¶ 4} In October 2015, Omari filed a motion seeking custody of N.M., due to alleged domestic violence in Brandi's home involving her spouse. In late August 2016, Omari filed a renewed and amended motion to modify parenting time and for child support. The motion also sought custody of both N.M., who was living with Omari, and B.M., who had been removed from Brandi's home on an emergency basis and placed with Omari. On October 13, 2016, the parties entered into an agreed order to have a guardian ad litem appointed and for Omari's child support to be suspended pending

---

[1] For purposes of convenience, we will refer to the parties by their first names.

further order of the court.

**{¶ 5}** Shortly thereafter, the Montgomery County Grand Jury indicted Brandi on two counts of child endangerment. Count One (to which Brandi pled guilty), alleged that Brandi had recklessly administered "corporal punishment or other disciplinary measures to," or had physically restrained her child, B.M., "in a cruel manner or for a prolonged period, * * * which punishment, discipline, or restraint was excessive under the circumstances and created a substantial risk of serious physical harm to the child * * *." Plaintiff's Ex. 2. The second count of the indictment contained the same language, with the addition that Brandi's actions resulted in serious physical harm to the child. *Id.* The charges, respectively, were a third-degree felony and a second-degree felony.

**{¶ 6}** In May 2017, Brandi pled guilty to the third-degree felony and was sentenced to two weekends of incarceration and up to five years of community control. The community control was based on several conditions, including that Brandi not have contact with B.M. or come within 1,000 feet of his person until further court order. Plaintiff's Ex. 4.

**{¶ 7}** On May 25, 2017, the parties entered into an agreed order, which provided that Omari would have custody of N.M., effective October 1, 2015, and custody of B.M., effective October 1, 2016. Brandi was ordered to pay child support of $416 per month for each child. At that time, Brandi's income was $55,000 per year. Support prior to April 1, 2017 was waived.

**{¶ 8}** In May 2018, an order was filed emancipating N.M. as of June 8, 2018, and ordering Brandi to pay $416 in support for B.M., plus $582.40 per month on a child support arrearage. Brandi then filed a motion on June 21, 2018, seeking to modify child support

based on a reduction in her income to $23,000 per year. After holding a hearing in August 2018, the magistrate found a change in circumstances based on a 10% deviation in the amount of recalculated child support.

{¶ 9} The magistrate, therefore, recommended that Brandi pay $169 per month per child from Feb. 1, 2018, until May 31, 2018, plus $67 per month on the arrearage created. Effective June 1, 2018, Brandi was to pay child support of $235 per month, plus 2% poundage, for one child, and $47 per month on the arrearage created by the order.

{¶ 10} Omari filed timely objections to the magistrate's decision, and supplemental objections after the transcript had been filed. After considering Omari's objections, the trial court overruled them, but modified the support slightly because the magistrate failed to include the amount Omari paid for health insurance. The court, therefore modified the amount for two children until May 31, 2018 to $192 per child plus $67 on the arrearage created, and the amount thereafter for one child to $258 per month, plus $47 on the arrearage created. Omari now appeals from the trial court's judgment.

II. Failure to Impute Income

{¶ 11} Omari's single assignment of error states that:

The Trial Court Erroneously Failed to Impute Income to Chandler.

{¶ 12} Under this assignment of error, Omari contends that the trial court erred in failing to impute income because Brandi lost her employment due to criminal acts. In reviewing orders modifying child support, we apply an abuse of discretion standard. *Baker v. Baker*, 2013-Ohio-1816, 991 N.E.2d 717, ¶ 41 (2d Dist.). An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Decisions are unreasonable if no sound reasoning supports the decision. *Id. Accord Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, ¶ 33.

{¶ 13} R.C. 3119.79(C) allows child support to be modified if a substantial change in circumstances exists that was not contemplated when the prior support order was issued. Under R.C. 3119.79(A), if a 10% deviation exists based on "the recalculated amount that would be required to be paid under the schedule and the applicable worksheet," the court is required to consider this as "as a change of circumstance substantial enough to require a modification of the child support amount."

{¶ 14} Brandi's loss of employment and reduction in income was an issue at the modification hearing. However, when the magistrate modified support, she only mentioned the 10% deviation and discussed no evidence. Instead, the magistrate only noted the 10% deviation and outlined what support would be due based on the child support computation worksheets. Doc. #157, pp. 3-6.

{¶ 15} In objecting to the magistrate's decision, Omari argued that the magistrate erred in failing to "credit the uncontradicted testimony that Ms. Chandler's decrease in income resulted from her felony conviction for child endangerment." Doc. #162, p. 1. Omari also asserted that the magistrate should have imputed income to Brandi at her

former income level. *Id.* In a supplemental memorandum, Omari cited to the testimony supporting his contentions. Doc. #164, p. 2.

{¶ 16} In ruling on Omari's objections, the trial court noted that the magistrate had not directly commented on whether Brandi's job loss was voluntary or involuntary. Doc. #169, p. 4. In concluding that Omari failed to sustain his burden of proving that Brandi's termination was voluntary, the trial court made the following observations:

> Brandi testified that she was terminated because of her criminal conviction. However, she offered Defendant's Ex. B, a letter from CAMRIS International dated January 18, 2018. The letter informed Brandi that CAMRIS had been instructed to terminate her employment "due to loss of funding." If Brandi's testimony is to be believed, the court could reasonably find that her termination was voluntary. If the letter accurately indicated the reason for her termination, then it is reasonable to find that Brandi was terminated through no fault of her own.
>
> The court finds no evidence other than that described above to corroborate why Brandi was fired. Neither piece of evidence is more persuasive than the other and the court cannot conclusively find that Brandi was terminated due to her criminal behavior.

Doc. #169 at p. 6.

{¶ 17} The Supreme Court of Ohio has said that "the question whether a [litigant] is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Rock v. Cabral,* 67 Ohio St.3d 108, 112, 616 N.E.2d 218

(1993). As noted, most instances of abuse of discretion involve a lack of sound reasoning. *AAAA Enterprises, Inc.* 50 Ohio St.3d at 161, 553 N.E.2d 597.

**{¶ 18}** Under R.C. 3119.01(C)(9), income is defined as either of the following:

(a) For a parent who is employed to full capacity, the gross income of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.[2]

**{¶ 19}** R.C. 3119.01(C)(17) defines potential income for persons voluntarily underemployed as imputed income that they would have earned if fully employed. The statute then lists 11 criteria to be used to decide the amount of income to be imputed. See R.C. 3119.01(C)(17)(i)-(xi).[3] The party who claims that the other parent is voluntarily underemployed has the burden of proof. *Ketchum v. Coleman*, 2d Dist. Miami No. 2013CA28, 2014-Ohio-858, ¶ 17; *Morrow v. Becker*, 2018-Ohio-3316, 118 N.E.3d 1077, ¶ 50 (9th Dist.).

**{¶ 20}** "Voluntary unemployment or underemployment does not warrant a downward modification of a child support obligation." *Albers v. Albers*, 2d Dist. Greene No. 2012 CA 41, 2013-Ohio-2352, ¶ 26. "To warrant modification, the change of circumstance generally must not be the result of voluntary actions." *Williams v. Williams*, 10th Dist. Franklin No. 92AP-438, 1992 WL 246020, *1 (Sept. 24, 1992) (parent who

---

[2] R.C. 3119.01 was amended, effective March 28, 2019. *See* Sub. H.B. 366, 2018 Ohio Laws File 76. Former R.C. 3119.01(C)(10) is now R.C. 3119.01(C)(9). No substantive changes were made, other than renumbering.

[3] *See* fn. 2. Former R.C. 3119.01(C)(11) is now R.C. 3119.01(C)(17). Again, no substantive changes were made, other than renumbering.

places himself or herself in position of being unavailable for gainful employment is not entitled to relief); *Kreuzer v. Kreuzer*, 2d Dist. Greene No. 00CA43, 2001 WL 468406, *5 (May 1, 2001).

{¶ 21} After reviewing the record, we can only come to the conclusion that the trial court's decision was based on unsound reasoning. The evidence was undisputed, and the trial court ignored Brandi's own testimony, which explained the circumstances surrounding her employer's letter.

{¶ 22} On May 25, 2017, when Brandi agreed to relinquish custody and pay child support, her income was listed on the child support calculation worksheet as $55,000. At the August 2018 modification hearing, Brandi testified that her annual salary at CAMRIS International was $49,680 as of June 8, 2017. Transcript of August 7, 2018 Hearing ("Tr."), pp. 15-16, and Defendant's Ex. 1. She also testified that her current annual income was only $23,995, based on her part-time employment at CompuNet, where she had worked for 14 years.[4]

{¶ 23} On January 18, 2018, Brandi received a letter from CAMRIS indicating that her employment would be terminated on January 28, 2018, "due to lack of funding." Defendant's Ex. B. This is the letter the trial court referenced. However, Brandi's own testimony explained the surrounding circumstances, and there is nothing confusing about what was said. Specifically, during Brandi's cross-examination, the following exchange occurred:

> Q. And my understanding, in result of the guilty plea, that was a

---

[4] For some unspecified period of time, Brandi had been simultaneously employed at CAMRIS and CompuNet, which explains why her income was $55,000 in May 2017.

third degree felony, correct?

A.  That's correct.

* * *

Okay.  Exhibit 4, is that a copy of your termination entry from the criminal case?

A.  Yes.

Q.  And all this time you were working at CAMRIS; correct?

A.  Yes.

Q.  Okay.  But you didn't notify CAMRIS about the indictment?

A.  Yes, I did.

Q.  When did you notify them about the indictment?

A.  I notified them *once my – once my contract ended with CAMRIS, I was going to another job, then I notified CAMRIS* of the indictment.

Q. Well, my understanding is that you were – that – well, CAMRIS is a government contract[or]; correct?

A.  Yes.

Q.  Works out at the base?

A.  Yes.

Q.  And it had a contract with the Department of Defense?

A.  Yes.

Q.  And their contract ended as of January 31, 2018?

A.  Yes.

Q.   And the employees of CAMRIS who worked on that base

contract, they were going to become employees of the new contractor; correct?

A. That's correct.

Q. Including you; correct?

A. That's correct.

* * *

Q. So you contacted the new contractor and advised them about the conviction; correct?

A. That's correct.

Q. And they in turn contacted CAMRIS. Notified CAMRIS of the conviction?

A. That's correct, as well.

* * *

And you were not retained by the new contractor as a result of the conviction?

A. That's correct.

Q. *And had it not been for the conviction you would be an employee of the new contractor today; correct?*

A. *That's correct.*

(Emphasis added.) Tr. at pp. 17-20.

**{¶ 24}** From this testimony, it could not be more clear that Brandi's job, like that of all other CAMRIS employees, ended because the company's contract with the government ended. Brandi, along with the other CAMRIS employees, was supposed to

be employed by the new contractor. However, when Brandi notified the new contractor about her felony conviction, the new contractor did not retain her. By her own admission, Brandi would have been employed by the new contractor but for her conviction.

{¶ 25} The trial court failed to consider these circumstances in a reasonable manner. A parent seeking to avoid imputation of income " 'must show an objectively reasonable basis for terminating or otherwise diminishing employment. Reasonableness is measured by examining the effect of the parent's decision on the interests of the child.' " *Croucher v. Croucher*, 2d Dist. Greene No. 2015-CA-43, 2016-Ohio-726, ¶ 16, quoting *Holt v. Troha*, 2d Dist. Greene No. 96-CA-19, 1996 WL 430866 (Aug. 2, 1996). We have stressed that "[c]hildren should not be made to suffer because of a parent's wrongdoing." *Kreuzer*, 2d Dist. Greene No. 00CA43, 2001 WL 468406, at *5. *Accord L.B. v. T.B.*, 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 18; *Taylor v. Taylor*, 2d Dist. Miami No. 2014-CA-21, 2015-Ohio-701, ¶ 24 (felony record, which hampered father's employment prospects was circumstance that he created and he should not be allowed to take advantage of his misdeeds).

{¶ 26} For the reasons discussed, the trial court abused its discretion when it concluded that Brandi's decrease in income was involuntary and not as a result of her intentional criminal actions.

{¶ 27} Accordingly, Omari's sole assignment of error is sustained. This matter will be remanded to the trial court for further proceedings as to the amount of income that should be imputed to Brandi for purposes of calculating child support. At the hearing, the trial court should consider Brandi's employment capability and her efforts to find jobs. *See Gibson v. Gibson*, 2d Dist. Montgomery No. 28171, 2019-Ohio-1799, ¶ 52 (regarding

ex-husband's employability after felony conviction and efforts to find comparable jobs).

## III.   Conclusion

**{¶ 28}** Omari's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded to the trial court to decide the amount of income that should be imputed to Brandi for purposes of calculating child support.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Martin A. Beyer
Kent J. Depoorter
Hon. Timothy D. Wood