[Cite as *Gibson v. Gibson*, 2019-Ohio-1799.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DAWN A. GIBSON | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28171 |
| | : | |
| v. | : | Trial Court Case No. 2011-DR-1008 |
| | : | |
| ROBERT J. GIBSON | : | (Appeal from Common Pleas Court – |
| | : | Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . . .

PRIYA D. TAMILARASAN, Atty. Reg. No. 0086373, 175 South Third Street, Suite 200, Columbus, Ohio 43215
    Attorney for Plaintiff-Appellant

MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the court on the October 17, 2018 notice of appeal of Dawn A. Gibson. Dawn appeals from the September 21, 2018 judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which overruled her objections to a magistrate's decision, reduced her former husband Robert Gibson's spousal support obligation, and denied her motion to enforce a suspended jail sentence imposed on Robert for a previous finding of contempt for failure to pay spousal support. We hereby affirm the judgment of the trial court.

{¶ 2} The parties' final judgment and decree of divorce, filed on February 23, 2015, stated that the parties were married in 1990 and had two emancipated children. According to the decree, the parties agreed that Robert would pay Dawn spousal support of $2,750 per month, commencing August 1, 2014, for a period of 96 months. The spousal support was "subject to the continuing jurisdiction of the Court as to amount only, not duration."

{¶ 3} By way of background, we note that on April 27, 2015, the Support Enforcement Agency issued findings related to Robert's spousal support obligation in this case. Robert contested the findings, and the trial court scheduled a hearing for August 12, 2015. Also, on June 26, 2015, Robert filed a motion to reduce his spousal support obligation. On August 12, 2015, the magistrate filed an order indicating that the parties had reached an agreement relative to the administrative order and that Robert's attorney was to file an agreed entry reflecting that agreement within 14 days. No agreed entry was filed.

{¶ 4} On September 16, 2015, Dawn filed a multi-branch motion seeking, among other things, an increase in spousal support, a finding of contempt, and attorneys fees.

Again, the parties reached an agreement and, on November 24, 2015, the magistrate ordered Dawn's attorney to file an agreed entry within 30 days. No agreed entry was filed and, on December 29, 2015, the magistrate issued a notice of potential dismissal of Dawn's motion, noting that it appeared that Dawn had "failed to prosecute the case by not proceeding with the full evidentiary hearing or resetting the matter in a timely manner." Similarly, on December 31, 2015, the magistrate issued a notice of potential dismissal of Robert's request for a hearing on the administrative findings of April 27, 2015, because he had also "failed to prosecute the case by not proceeding with the full evidentiary hearing or resetting the matter in a timely manner."

{¶ 5} On January 29, 2016, the parties filed an agreed entry which stated that Robert voluntarily dismissed his motion to reduce spousal support and Dawn dismissed her motion to increase spousal support. The entry also stated that the parties agreed that Robert had a spousal support arrearage of $31,545, which included a credit in the amount of $11,250; Robert agreed to pay the $31,545 spousal support arrearage to Dawn by December 31, 2015.[1] The agreed entry also stated that Robert would pay $802.90 in marital debt to PNC Bank, $4,500 to Dawn for attorney fees as ordered in the final decree, and $750 in additional attorney fees to prosecute her motion. The agreed entry stated that it represented Robert's "first Civil Contempt finding," that he was sentenced to three days in the Montgomery County Jail, and that the sentence was "held in abeyance

---

[1] We recognize that the deadline for payment specified in the January 29, 2016 agreed entry had already passed when the entry was filed. Dawn's brief addresses this discrepancy in a footnote, explaining that the entry was negotiated before the December 31, 2015 deadline but, due to trail court extension, the agreed entry was filed after the deadline. According to Dawn's brief, the December 31, 2015 deadline remained the agreed-upon date for Robert to make the specified payments.

pending his purge opportunity." Finally, the agreed entry provided that Robert could purge the contempt finding by making the above referenced payments and remaining current on all spousal support obligations, including any arrearage repayment. The agreed order was signed by Dawn's attorney, the magistrate, and the judge; the following statement appeared above the signature line for Robert's attorney: "Seen but not approved."

{¶ 6} On February 4, 2016, the trial court dismissed Robert's motion for a hearing on the Support Enforcement Administration's administrative order for want of prosecution, stating that the parties' agreed entry of January 29, 2016 addressed the spousal support arrearage, which was the basis for the disputed administrative findings.

{¶ 7} On February 11, 2016, Robert filed objections to and a motion to vacate the agreed entry filed on January 29, 2016, on the basis that the parties had never reached an agreement and none was read in the record. Robert asserted that the "fact that there was not an agreement reached is evidence [sic] by the Agreed Entry submitted to the Court by the Plaintiff wherein Counsel for the Plaintiff indicated that there was no agreement to sign the Entry. As such, the Agreed Order never should have been filed."

{¶ 8} On May 11, 2016, Dawn filed a motion seeking to liquidate Robert's Merrill Lynch account, with a current approximate balance of $4,811.68, "in partial satisfaction of [his] current and future spousal support arrearage and obligation" pursuant to the January 29, 2016 agreed entry. In a separate motion filed on the same day, Dawn sought various temporary restraining orders against Robert in order to "maintain the status quo as it relates to the assets of the parties." Dawn attached her own affidavit.

{¶ 9} On July 27, 2016, a magistrate filed an order stating that the parties had

reached an agreement with respect to Dawn's motion to liquidate Robert's Merrill Lynch account and ordered Dawn's attorney to file an agreed entry within 14 days. On August 3, 2016, an agreed entry and order was filed, stating that the account would "be immediately liquidated" and the proceeds paid to Dawn "in partial satisfaction of [Robert's] current and future spousal support arrearage and ongoing obligation." The entry had been signed by the trial judge and Dawn's attorney, and by counsel for Robert "Per email authorization."

{¶ 10} On October 27, 2016, Dawn's attorney filed a "Stipulated Qualified Domestic Relations Order," which assigned certain of Robert's retirement benefits to Dawn; specifically, it assigned Dawn "100% of the vested portion of [Robert's] account balance under the Plan" as of August 3, 2016. The order was signed by Dawn's attorney and the trial judge; above the signature line for Robert's attorney was the statement "Seen but not approved."

{¶ 11} On January 6, 2017, Robert voluntarily dismissed the objections he had filed on February 11, 2016, seeking to vacate the agreed entry filed on January 29, 2016.

{¶ 12} On January 20, 2017, Robert filed a motion to reduce his spousal support obligation, asserting that his income was "significantly less than it was at the time" of the final decree of divorce. Several continuances were granted, and this motion remained pending in October 2017.

{¶ 13} On October 2, 2017, Dawn filed a multi-part motion. The first branch sought "to enforce the sentence ordered by the court on January 29, 2016 and held in abeyance," asserting that Robert had failed to make the required payments. In the second branch, Dawn asked the court to reduce the spousal support arrearage, which

was $31,545 as of December 31, 2015, to a lump sum judgment, "in order to permit civil enforcement and assess statutory interest." In the third branch, Dawn sought a "finding of a Second Contempt," because Robert had failed to maintain current spousal support payments since the time of the prior contempt finding for failure to pay spousal support; "[f]rom January 1, 2016 to present, the Defendant's spousal support obligation totals $57,750, of which Defendant has paid $802.75." Finally, in the fourth branch of her motion, Dawn sought additional attorney fees for the prosecution of her motions, pursuant to R.C. 3105.18(G).

{¶ 14} On December 11, 2017, the magistrate conducted a hearing. Robert testified therein that, at the time of the divorce in February 2015, he was earning between $100,000 and $200,000 a year doing consulting work for companies that work with the Air Force at Wright Patterson Air Force Base. He had remarried in March 2015. Robert stated that, in October 2015, he was sentenced to a prison term for first degree felony theft and that, as a result on his conviction, he was no longer eligible for a security clearance at Wright Patterson Air Force Base.

{¶ 15} Robert testified that, when he filed his motion to reduce his spousal support obligation, he was employed at Dorothy Lane Market ("DLM"), working 20 to 30 hours per week and earning $9 - $11 per hour. Robert testified that, in a year, he would earn $15,600 at DLM. He testified that he was employed at DLM from December 2016 to April 2017, and that he left that job for "a better opportunity" driving as an independent contractor for Rush Delivery. Robert worked full time for Rush Delivery and was paid weekly "by the delivery." He testified that he made between $300 and $600 per week, and that his expenses for gas, insurance, and car repairs consumed 50 percent of his

gross income. Robert left Rush Delivery at the end of September 2017 to help his wife with an Internet marketing company that she started. Robert testified that the Internet marketing company "broke even at best" because of the expenses his wife had incurred. Robert stated that his wife was also employed full time at AmeriWater as a buyer.

{¶ 16} Robert testified that, in the last week of November 2017 (a couple of weeks before the hearing), he obtained an independent contracting job teaching English to Chinese and Taiwanese students over the Internet. He was to be "paid on 10th of each month for the month in the rear," but "didn't have enough hours to be paid December 10th," so he would be paid on January 10th. Robert testified that he taught two to three classes a day and was paid a "base rate of $7.50, plus a bonus for each student's variable rating, meaning they rate me; I get a bonus." Robert testified that he had no other sources of income and no assets. Regarding his spousal support obligation, Robert testified that he had paid what he could afford, which was "50, 75 bucks a month." He stated that, while he was in prison, he did not make spousal support payments, but "there was some taken out of [his] monthly prison check."

{¶ 17} Regarding Dawn's motion to enforce his suspended jail sentence, Robert testified that he was in prison in January 2016 and that, before going to prison, he had paid a total of "[m]aybe $500" to Dawn's attorney of $4,500 owed in attorney fees. Robert testified that he was not sure he was aware of an additional $750 obligation for attorney fees he was ordered to pay related to contempt proceedings in January 2016. Robert asserted that when he entered the agreement with Dawn in the summer of 2014 regarding the monthly amount of spousal support, how long it would last, and when it would begin (as later reflected in the final decree of divorce), he was not aware that he

was under criminal investigation or had been indicted; he was made aware of that fact in December 2014 by a letter from the investigator.

{¶ 18} On cross examination, Robert testified that he had a bachelor's degree in political science; he and his current wife purchased their Centerville home after their marriage. Robert acknowledged that, in his motion for judicial release from prison, he expressed confidence in his ability to secure employment within 30 days of his release in the role of operations management and proposal developments. He testified that he had paid $6,000 – $7,000 in restitution since he was released from prison, and that he had paid "[m]aybe [$]30, 40,000" prior to being convicted and sentenced. The following exchange occurred:

Q. (DAWN'S ATTORNEY) Now, Mr. Gibson, are you aware that you just testified that you were not aware of this investigation at the time you were divorced?

A. I had a payment plan with my brother.

Q. So you knew you owed that money?

A. I knew I owed the money. I didn't know it was a criminal matter.

Q. So when you agreed to pay spousal support, you were aware that you owed over $250,000?

A. Yes.

{¶ 19} When asked about other attempts to find work, Robert testified that he had "tried to get trucking jobs. I couldn't qualify with a criminal background." He had also applied to some defense contractors, but never heard back, and had done "some independent contracting sales jobs that didn't pan out, not worth mentioning. Didn't pay

me. Or I couldn't perform." Robert stated that he probably applied to 50-100 jobs in this timeframe. When asked what prevented him from finding a job, Robert replied, "[m]y reputation in the community and the felony record." Robert testified that his wife paid all of the expenses associated with their home.

{¶ 20} The following exchange occurred with the court:

THE COURT: * * * I have a Stipulated Qualified Domestic Relations Order that transferred all of your retirement to the plaintiff so that all of your retirement went to her. Do you know how much that was?

THE WITNESS [ROBERT]: No.

THE COURT: Okay. And then there was a liquidation of a Merrill Lynch account?

THE WITNESS: I think that was less than ten, but I'm not sure.

THE COURT: Okay. Because it was supposed to be applied to the spousal support. And I don't see any record with the SEA that they gave you credit for that.

THE WITNESS: * * * I remember agreeing to it, but I never saw any paperwork after I agreed to it and what the amount was.

THE COURT: * * * I don't know if it's the eleven two-fifty or not. I have to inquire of the plaintiff then. * * *

{¶ 21} On redirect examination, Robert testified that he was on five years of mandatory probation and was obligated to pay restitution of $500 per month; his restitution payments were current.

{¶ 22} Dawn testified that Robert had a spousal support arrearage of

approximately $110,000. She stated that he did not pay the marital debt to PNC Bank, the $4,500 for attorney fees, or the $750 in additional attorney fees for the contempt proceedings.

{¶ 23} The following exchange occurred:

THE COURT: * * * So ma'am, the Merrill Lynch Account, KPMG PRSP that was liquidated, how much did you get?

THE WITNESS (DAWN): * * * It still hasn't been determined, but it's probably less than 3,000.

THE COURT: * * * There was an indication that he was to receive $11,250 credit?

THE WITNESS: That isn't for the Merrill Lynch.

THE COURT: What was that for?

THE WITNESS: That was from a possible agreement that was made a couple years ago.

THE COURT: I'm looking at the agreed order. But he was to receive credit for that, correct, in that amount?

THE WITNESS: I think that was payments that he made incorrectly to me versus the - - to the CSEA, if I remember correctly, I'd have to look at my paperwork.

THE COURT: Except that the SEA did not give him credit for that.

THE WITNESS: And I believe that might have been part of the order that [Robert's attorney] Dave McNamee did not agree to.

THE COURT: Except I have an agreed order that says give him

credit, so.

THE WITNESS: I can't say without looking at my paperwork

THE COURT: * * * I'm looking at the paperwork. And I'm looking at the SEA account. And they may have gave him credit, so that would reduce - -

THE WITNESS: I know we had a hearing with * * * SEA * * *. And they didn't agree to give him credit.

THE COURT: Well, but this agreed order says give him credit, so we'll take care of that.

{¶ 24} Dawn stated that, at the time of her divorce, she made approximately $9,600 a year, and that she was employed at the time of the hearing at Dinsmore & Shohl as a legal assistant, making $50,000 a year.

{¶ 25} At the conclusion of the hearing, Dawn withdrew the portion of her motion seeking a lump sum judgment.

{¶ 26} On February 21, 2018, the magistrate filed a decision. The decision noted that "[n]either party had firm figures on the exact arrearage." In a section related to Robert's contempt, the magistrate found as follows:

Defendant has not paid spousal support as ordered. There appears to be no dispute about this. SEA records [Exhibit 1] show an arrearage of $105,092.25 owing to plaintiff. Small payments have been made on the account from May 2015 through November 2017. Agreed Orders filed January 29, 2016 and August 3, 2016 acknowledge the arrearages.

Several debts allocated in the divorce to defendant remain unpaid.

Defendant is unable to pay the spousal support due to his current employment opportunities and the fallout from his conviction.

The loss of his job was a result of his own voluntary criminal actions and does not excuse his contempt.

Defendant is found, by clear and convincing evidence, in contempt for failing to pay spousal support and other financial obligations imposed in the parties' divorce decree. Defendant is sentenced to ten days, to be suspended.

As a result of the contempt, plaintiff is awarded $500 in attorney fees to prosecute the contempt.

{¶ 27} Addressing the motion to reduce spousal support, the magistrate determined as follows:

It is undisputed that defendant is not able to earn the income he was earning in 2014. His felony conviction and incarceration has negatively impacted his income and earning abilities. He has no assets. Defendant has a college education and is healthy. Defendant has found employment. It is found that defendant has experienced a substantial decrease in income. This is found to be a change in circumstances.

Plaintiff has become fully employed and earns $50,000 annually. This is also a change of circumstances that warrants exercise of the court's continuing jurisdiction.

The factors outline[d] in R.C. 3105.18(C)(1) have been carefully considered. Defendant has earning ability between $17,160 [Dorothy

Lane Market job] and $13,050 [Rush Delivery & Teaching].

Consideration of defendant's inability to regain employment at the level enjoyed before the divorce is both relevant and equitable in determining whether the current amount of spousal support, or any amount of spousal support, is appropriate and reasonable.

It is found that the monthly amount of $100 is a reasonable, appropriate, and equitable amount of spousal support for defendant to pay pending his search for better employment. Said reduction will be made effective the date of service of the motion on plaintiff [7-1-17]. This date accurately reflects defendant's financial situation while providing due process to plaintiff.

(Bracketed information sic.)

{¶ 28} Addressing the arrearage, the magistrate determined as follows:

The arrearage reflected in the SEA audit [Exhibit I] does not accurately reflect the actual arrearage as it does not credit defendant with all payments made as acknowledged in the Agreed Entry filed January 29, 2016 and the Agreed Entry filed August 3, 2016. Neither party could confirm the balance of the Merrill Lynch account that was liquidated. The parties through counsel should confirm the actual arrearage including attorney fees and file an Agreed Entry requesting the SEA to correct its records.

Defendant shall pay $50 monthly on any remaining arrearage.

{¶ 29} The magistrate made the following orders:

1. Plaintiff's Motion for Enforcement, Contempt and Attorney Fees filed October 2, 2017 is found well-taken and granted as set forth below; * * *.

2. Defendant's Motion to Reduce Spousal Support filed January 2, 2017, is granted as set forth below.

3. Defendant is found in contempt for failing to pay spousal support as ordered and for failing to pay marital obligations as set forth in the decree.

4. Defendant is sentenced to five (5) days in jail; jail is suspended on condition defendant pay as ordered.

5. Plaintiff is awarded $500 in attorney fees; defendant shall pay the fees within 180 days of the filing of any final judgment on this matter.

6. The contempt may be purged upon lump-sum payment of the attorney fees and $500 toward the arrears.

7. Spousal support is reduced from $2,750.00 per month to $100.00 per month. Effective July 1, 2017. * * *

8. Defendant shall pay $50.00 monthly on the arrears.

9. Defendant shall seek full-time employment and report any changes in employment and income to the plaintiff.

{¶ 30} Dawn filed objections to magistrate's decision on March 7, 2018. Dawn urged the trial court to review the magistrate's decision "for error in findings of fact and conclusions of law," specifically with respect to the application of liquidated funds towards spousal support arrearage, the failure to enforce the prior suspended sentence, the determination of Robert's earning potential, the determination of the date of service, the

determination of arrearage payments, and the failure to establish a finite time for Robert to purge the second contempt. Dawn requested the right to supplement her objections when the transcript of the proceedings had been prepared and field a request for preparation of the transcript.

{¶ 31}  In its judgment, the trial court noted that the transcript of proceedings was filed on March 28, 2018, that Dawn did not supplement her objections after the transcript was filed, and that Robert had not responded to Dawn's objections. The court noted, pursuant to the parties' final judgment and decree of divorce, spousal support was "subject to the Court's continuing jurisdiction as to amount, but not as to duration." The court further noted that two agreed entries had been filed subsequent to the final judgment and decree of divorce – on January 29, 2016 and August 3, 2016 – that pertained to the payment of the spousal support arrearage.

{¶ 32} Regarding Dawn's objection to the "application of liquidated funds toward spousal support arrearage," the court determined as follows:

> The Agreed Entry filed January 29, 2016 and Agreed Entry filed August 3, 2016 state that as of December 1, 2015, Robert's spousal support arrearage totaled $31,545.00. The Agreed Entry states in pertinent part: "* * * the parties agreed that as of December 1, 2015, the Defendant is in arrears of payment of spousal support in the amount of $31,545.00 * * *[;] this amount includes a credit to Defendant in the amount of $11,250.00 pursuant to the Agreed Entry and Order being filed simultaneously herewith. Defendant shall pay spousal support arrears to Plaintiff * * * in the total amount of $31,545.00, on or before December 31, 2015 * * *. " A review

of the record indicates that no Agreed Entry and Order relating to the $11,250.00 credit was filed with this Court.

With regard to the liquidation of a Merrill Lynch account and credit for this payment toward the arrearage, the Agreed Entry filed August 3, 2016 states in pertinent part as follows: " * * * Defendant's [SSN] Merrill Lynch KPMG PRSP Account shall be immediately liquidated and the proceeds therefrom immediately paid to Dawn A. Gibson in partial satisfaction of Defendant's current and future spousal support arrearage and ongoing obligation."

Insufficient evidence was presented at the hearing to substantiate the amount of credit to apply toward the arrearage as a result of the liquidation of the Merrill Lynch account.

The Magistrate Decision found that the SEA audit did not accurately reflect the actual arrearage as it did not credit the defendant for payments made pursuant to the Agreed Entries indicated above. The Court finds no error in the Magistrate Decision. The Court finds that the parties through counsel should confirm the actual arrearage including attorney fees and file an Agreed Entry requesting the SEA to correct its records.

The Court finds Dawn's objection as it relates to the credits on the SEA audit is without merit and [it] is overruled.

{¶ 33} Regarding Dawn's objection to "the failure to enforce the prior suspended sentence," the court found as follows:

The relief sought by Dawn with regard to her motion to enforce was

not presented at the hearing. In the Magistrate Decision, Robert was found in contempt of the Court's orders and sentenced accordingly. In the absence of additional argumentation explaining this objection with particularity, the Court finds that this objection is without merit and [it] is overruled.

{¶ 34} Regarding Dawn's objection to the determination of Robert's earning potential, the court determined as follows:

Dawn does not provide her reasons disputing the determination of Robert's earning potential. Robert has been employed as a consultant at Wright Patterson AFB, making between $100,000.00 and $200,000.00 per year, at the time of the divorce. * * * Robert testified that due to his recent felony conviction, he is currently unable to secure the clearance necessary to perform the government contracting work he had done at the time of the parties' divorce. Robert testified that recently, he had worked part-time at [DLM] at the hourly rate of $9.00 to $11.00 per hour. * * *

Pursuant to his affidavit of Financial Disclosure filed with his Motion to Reduce Spousal Support, on January 20, 2017, Robert estimated his annual income from DLM to be $15,600[.] Robert quit his job at DLM in April of 2017. * * * Robert then began working at Rush Delivery, where he testified that he was making $300.00 to $600.00 per week, with 50% of his gross amount going toward expenses. * * * Robert stopped working at Rush Delivery at the end of September, 2017. * * * Robert testified that he had started teaching English to Chinese students online in November 2017, but

had not yet received a paycheck at the time of the hearing. * * * Giving consideration to the factors in R.C. 3105.18(C)(1), Robert's earning ability is approximately $15,600.00. This is the amount provided on the Affidavit, as supported by Robert's testimony, as his annual income had he remained employed at DLM. Further, at his highest weekly gross income at Rush Delivery, $600.00 per week, minus 50% for his expenses, this $300.00 per week equals an annual income of $15,600.00. No evidence was presented to support a finding of a higher income potential given the circumstances. Based upon the evidence presented, the court finds it reasonable to find that spousal support should be reduced to $100.00 per month, with an additional $50.00 payment on the arrearage.

The Court finds Dawn's objection regarding the determination of Robert's income to be without merit and [it] is overruled.

{¶ 35} Regarding Dawn's objection to the "determination of the date of service," the court determined as follows:

In the absence of more particularity in this objection, the Court can only surmise that this argument relates to the effective date of the decrease in spousal support, which the Magistrate's Decision found to be the date Dawn was served with Robert's motion.

The Court's docket indicates that Dawn was served with Robert's Motion to Reduce Spousal Support on July 1, 2017. Typically the effective date of a resultant order is the filing date of the motion, which in this case would have been January 20, 2017. It appears that there was a significant

delay in perfecting service of this motion. The Court finds it equitable to order that the reduction in spousal support be effective as of the date of service, July 1, 2017.

The Court finds Dawn's objection related to the determination of the date of service to be without merit and [it] is overruled.

{¶ 36} Regarding Dawn's objection to the amount of the arrearage payments, the court noted that Dawn withdrew her motion for a lump sum judgment at the hearing. Based on the evidence presented at the hearing, the court found that a $50 per month payment on the spousal support arrearage was "fair and equitable," overruling Dawn's objection.

{¶ 37} Finally, regarding Dawn's objection that the magistrate failed to set a finite time for Robert to purge the contempt finding, the court noted that the magistrate's decision required Robert to pay Dawn $500 in attorney fees within 180 days of the filing of any final judgment, and that the contempt could be purged upon the payment of the $500 toward attorney fees and $500 toward the arrearage; the decision stated no timeframe indicated for this "lump sum payment." The trial court found Dawn's objection regarding a finite time to purge the finding of contempt to be well-taken, and ordered that Robert pay $500 toward the arrears within 180 days of its judgment.

{¶ 38} Dawn raises three assignments of error on appeal. We will first consider her second and third assignments of error together. They are as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY ERRONEOUSLY CONCLUDING THAT A CHANGE OF CIRCUMSTANCES OCCURRED JUSTIFYING A MODIFICATION OF

APPELLEE'S SPOUSAL SUPPORT.

THE TRIAL COURT ERRED BY FINDING THAT AN AWARD OF $100 PER MONTH FOR SPOUSAL SUPPORT AND $50 FOR ARREARAGES IS REASONABLE.

**{¶ 39}** In her second assignment of error, Dawn asserts that the change in Robert's income since the time of the original spousal support award "directly and singularly ar[ose] from his criminal conviction for stealing over $250,000 from his family" and should not justify a reduction in spousal support. She further points out that, when Robert agreed to pay a spousal support award as part of the divorce decree, he "was well aware of his illegal behavior, even if he had not yet been charged." Dawn directs our attention to *Taylor v. Taylor*, 2d Dist. Miami No. 2014-CA-21, 2015-Ohio-701, and asserts that this Court and "many other Ohio courts have specifically found that incarceration due to criminal conduct is voluntary."

**{¶ 40}** Robert responds that the trial court did not abuse its discretion in finding that a change in circumstances had occurred. At the time of the parties' divorce, Robert was employed earning approximately $100,000 to $200,000 per year; he was aware that he owed over $200,000 to his mother's estate, but he had an informal agreement with his brother to repay the debt. As such, Robert asserts that he "was not aware, nor had contemplated, at the time of his divorce, * * * that this debt would become a criminal matter and that he would subsequently be convicted of a felony. Once this occurred, [Robert's] ability to earn an income comparable to the kind he was earning at the time of his divorce ceased to exist."

**{¶ 41}** In reply, Dawn asserts that the relevant factor before the court was not the

foreseeability of the incarceration, as Robert argues, but the fact that the change in his income was due to his own criminal conduct, and that Robert was aware of the criminal investigation when the Final Judgment and Decree of Divorce was filed in February 2015.

{¶ 42} In her third assignment of error, Dawn argues that, even considering the Robert's criminal behavior and reduction in income, the spousal support award of $100 was unreasonable, especially considering Robert's testimony that his current wife paid all the expenses at their home and that any money he made could be paid toward spousal support or restitution. She asserts that, even with Robert's income of $15,600 per year ($1,300 per month) and with his restitution payment of $500 per month, he was capable of paying at least $800 per month in spousal support and/or arrearages.

{¶ 43} "R.C. 3105.18(E) allows spousal support to be modified where there is a change in circumstances and the court has retained jurisdiction over spousal support." *Taylor*, 2d Dist. Miami No. 2014-CA-21, 2015-Ohio-701, ¶ 21. R.C. 3105.18 provides:

(F) For purposes of divisions (D) and (E) of this section and subject to division (F)(2) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as both of the following apply:

(a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate.

(b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was

foreseeable.

In order to justify a modification of the spousal support award, a decrease or change in income must not have been voluntary. *Grosz v. Grosz*, 10th Dist. Franklin No. 04AP-716, 2005-Ohio-985, *3, citing *Melhorn* v. *Melhorn*, 2d Dist. Montgomery No. 11139, 1989 WL 8452 (Jan. 30, 1989). R.C. 3105.18(C)(1) contains 14 factors for a court to consider in determining if spousal support is appropriate.

{¶ 44} " 'The person seeking a reduction of spousal support bears the burden of showing that the reduction is warranted.' * * *." *Taylor* at ¶ 21, quoting *Young v. Young,* 2d Dist. Darke No. 2012 CA 1, 2012-Ohio-5310, ¶ 15. Trial courts have broad discretion regarding spousal support orders. Accordingly, an appellate court will not disturb those orders absent an abuse of discretion. *Alexander v. Alexander*, 2d Dist. Montgomery No. 26730, 2016-Ohio-5048, ¶ 7. A trial court abuses its discretion when the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*, citing *Young* at ¶ 16.

{¶ 45} The magistrate found that Robert had experienced a substantial decrease in income and found this to be a change in circumstances. The magistrate further found that Dawn had become fully employed and earned $50,000 annually, which was also a change in circumstances. Thus, the magistrate found that these changes warranted exercise of the court's continuing jurisdiction over spousal support. In ruling on Dawn's objections, the trial court noted that "[n]o evidence was presented to support a finding of a higher income potential [for Robert] given the circumstances"; considering the factors set forth in R.C. 3105.18(C)(1) and based upon the evidence presented, the court found it reasonable to reduce the spousal support to $100 per month, with an additional $50 payment on the arrearage.

**{¶ 46}** In *Taylor*, 2d Dist. Miami No. 2014-CA-21, 2015-Ohio-701, to which Dawn directs our attention, Larry Taylor appealed from the trial court's decision finding him in contempt and refusing to modify or terminate his spousal support obligation. *Id.* at ¶ 16. Larry and his wife were divorced in August 2012, and Larry had been terminated from his position as a custodian in December 2011. *Id.* at ¶ 4-5. His income as a custodian in the year before the divorce was $40,959, and he also had farm income. *Id.* at ¶ 5. In May or June 2013, Larry was convicted of a felony. *Id.* at ¶ 12. In September 2013, Larry's ex-wife filed a motion seeking a finding of contempt, in part for Larry's failure to pay support; Larry filed a motion to modify, suspend, or terminate spousal support in December 2013. *Id.* at ¶ 8.

**{¶ 47}** At the hearing before the magistrate, Larry admitted that he failed to pay support and that he was in arrears in excess of $28,000. *Id.* at ¶ 11.

At the hearing, Larry indicated that he had last worked on December 20, 2011, when he was fired from his employment as a custodian at Miami East Schools. He received income of about $19,000 thereafter from unemployment compensation, but did not pay any spousal support from those funds. He also had been convicted of a felony in May or June 2013, based on unlawfully transporting a firearm in a motor vehicle. Although Larry claimed to have been seeking work, he provided no documentation to substantiate his efforts.

In addition, Larry stated at the hearing that he was unable to farm his mother's land any longer because the bank had foreclosed on his farm equipment. He also indicated that he was eligible to receive retirement

benefits from SERS, but had chosen not to take those benefits. By doing so, he had chosen to deprive his ex-wife of her share of the retirement proceeds, and had also not taken money that he could have used to pay spousal support. At the time of the hearing, Larry was living rent-free in a house owned by his mother, and was being financially supported by Bonnie Heaton, who lived there with him.

After hearing the evidence, the magistrate concluded that Larry did not show a substantial change in circumstances. The magistrate noted that Larry's termination of his employment was voluntary, and was also known to the court at the time of the prior spousal support order. In addition, the magistrate noted that Larry's criminal conviction was of his own choosing and could not be used to lower or eliminate his obligation to pay spousal support. Finally, the magistrate concluded that Larry chose not to apply for or receive benefits from SERS even though he was eligible.

The magistrate also found Larry in contempt for failing to pay spousal support. In this regard, the magistrate observed that Larry failed to provide evidence of inability to work, and had willfully refused to apply for SERS benefits, which would have given him a monthly income to pay most of his spousal support obligations. * * *

*Id.* at ¶ 12-15.

**{¶ 48}** The trial court overruled Larry's objections and slightly modified the magistrate's decision by eliminating a portion of attorney fees and court costs. *Id.* at ¶ 16. On appeal, this court determined that "Larry's unemployment, both in terms of his

custodial work and his failure to continue farming, was known at the time of the initial spousal support decision," and "these factors cannot support modification or termination of the existing spousal support order." *Id.* at ¶ 23. This court noted the "only remaining factor is Larry's felony record." *Id.* at ¶ 24.

**{¶ 49}** In *Taylor*, we observed:

> Voluntary unemployment or underemployment does not warrant a downward modification of a child support obligation. *Kreuzer v. Kreuzer*, 2d Dist. Greene No. 00CA43, 2001 WL 468406, *3 (May 4, 2001), citing *Woloch v. Foster*, 98 Ohio App.3d 806, 649 N.E.2d 918 (2d Dist. 1994). Incarceration may or may not warrant a modification, depending on the circumstances involved, but we and many Ohio courts have found incarceration due to criminal conduct to be voluntary. *See, e.g., L.B. v. T.B.,* 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 16; *Richardson v. Ballard*, 113 Ohio App.3d 552, 554, 681 N.E.2d 507 (12th Dist. 1996); *Brockmeier v. Brockmeier*, 91 Ohio App.3d 689, 693, 633 N.E.2d 584 (1st Dist. 1993); *Cole v. Cole*, 70 Ohio App.3d 188, 194, 590 N.E.2d 862 (6th Dist. 1990). Whether a parent is voluntarily unemployed or underemployed is a fact-sensitive determination that is committed to the trial court's sound discretion. *Fischer v. Fischer*, 2d Dist. Clark No. 11 CA 81, 2012-Ohio-2102, ¶ 19, citing *Combs v. Combs*, 12th Dist. Warren No. CA2001-11-102, 2003-Ohio-198.

*Taylor*, 2d Dist. Miami No. 2014-CA-21, 2015-Ohio-701, ¶ 24, quoting *Albers v. Albers*, 2d Dist. Greene No. 2012 CA 41, 2013-Ohio-2352, ¶ 26.

**{¶ 50}** The Court concluded:

The rationale in these cases applies to the situation in the case before us, even though Larry was not apparently incarcerated as a result of the criminal charge. To the extent that Larry blames his alleged inability to find a job on his criminal conviction, it was "a voluntary act that does not warrant relief from a support obligation." *Ulery [v. Ulery,* 2d Dist. Clark No.2009-CA-12, 2011-Ohio-5211,] at ¶ 7. Accordingly, we see no basis upon which to conclude that the trial court abused its discretion in refusing to modify or terminate spousal support, nor do we find that the trial court's decision was against the manifest weight of the evidence."

*Taylor* at ¶ 25.

**{¶ 51}** In affirming the finding of contempt, this Court further noted that "Larry chose not to work – a fact that he admitted at the contempt hearing, when he indicated that he did not work, since it would cost him money, i.e., he observed that if he worked, he would have to pay a portion of his wages to his ex-wife, and that made 'no sense' to him." *Id.* at ¶ 30.

**{¶ 52}** Herein, Robert acknowledged that he was aware at the time of the divorce, when he agreed to pay spousal support in the amount of $2,750 per month, that he owed over $250,000 due to his theft, and he testified that he had a "payment plan" with his brother. The loss of his security clearance, however, was a subsequent collateral consequence of his conviction. The magistrate and the trial court clearly credited his testimony that he was unable to find work comparable to his prior employment as a result his conviction and, accordingly, found that he was entitled to a reduction in his spousal

support obligation. Unlike in *Taylor,* Robert testified that he had made repeated efforts to find employment and obtained some lower-paying jobs, and that he consistently paid Dawn what he could, namely $50 to $75 a month. Court's Exhibit I, the Support Enforcement Agency audit, also reflects that Robert made multiple small payments from May 2015 through November 2017. Given Robert's change of circumstances, we see no abuse of discretion in the reduction of Robert's spousal support obligation to $100 a month with an additional $50 on his arrearage. Accordingly, Dawn's second and third assignments of error are overruled.

{¶ 53} Dawn's first assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO ENFORCE THE PRIOR SUSPENDED SENTENCE.

{¶ 54} Dawn asked the trial court "to enforce the sentence ordered by the court on January 29, 2016 and held in abeyance," but the trial court failed to impose the sentence ordered in the 2016 entry. Dawn asserts that the trial court "erroneously entertained" her motion to enforce as an "initial charge of contempt," and offered Robert another opportunity to purge the contempt rather than finding that he had failed to purge the prior contempt. "Factually, it is undisputed that the opportunity to purge offered in the 2016 Entry was not satisfied." Dawn argues that the magistrate and the trial court "indeed found that [Robert] failed to pay the arrearages, PNC marital debt, attorney fees for the Divorce Decree and the attorney fees for the Motion for Contempt."

{¶ 55} Dawn asserts that, while Robert attempted to defend his failure to purge the contempt by arguing that he was unable to abide by the 2016 agreed entry due to his underemployment (and also asserted that he was unaware of the 2016 entry), the

magistrate found that the January 26, 2016 agreed entry was "a valid court order." Dawn asserts that the "trial court erred by failing to impose the sentence held in abeyance by the 2016 Entry" after granting branch one of her motion to enforce.

{¶ 56} Robert responds that the transcript of the hearing before the magistrate reflects that Dawn made "no specific request for any relief" regarding enforcement of the prior sentence imposed on him, and he argues that she may not expand her argument in the appellate court. Robert also argues that the trial court's decision not to impose previously ordered sanctions, and instead to impose new sanctions and another opportunity to purge the contempt, was not an abuse of discretion.

{¶ 57} In reply, Dawn asserts that Civ.R. 53(D) and Mont.D.R. Rule 4.44 "each state that the grounds of objection must be *stated*, not argued or established." Dawn argues that her objections "complied with these mandates." Dawn contends that the trial court abused its discretion in failing to *enforce* its previously imposed sanction, but that she "is not arguing that the trial court erred in the sanction imposed." Dawn argues that Robert cited no basis or authority "to support his contention that a party must verbally request relief," and that he was asking this court to find "that the written contents of a Motion are not considered by a court if it holds an evidentiary hearing." Dawn asserts that the trial court's failure to treat branch one of her motion as a motion for enforcement was an abuse of discretion, and that there was no requirement that she state the content of her written motion on the record.

{¶ 58} As noted above, the January 29, 2016 agreed entry provided that Robert could purge the finding of contempt by making the payments listed therein and remaining current on any and all spousal support obligations, including any arrearage repayment.

Robert testified that the order was filed while he was in prison and unable to make payments other than from his prison account.

{¶ 59} "Failure to pay court-ordered spousal support is classified as a civil contempt." *Murphy v. Murphy*, 5th Dist. Stark No. 2007CA00069, 2008-Ohio-1971, ¶ 25, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 139-40, 472 N.E.2d 1085 (1984). "Because the nature of the contempt is civil, 'willful disobedience' (i.e. intent) is not a necessary element." *Id.,* citing *Pugh.* However, the "inability to pay support is a valid defense in a contempt proceeding." *Id.*, citing *Courtney v. Courtney*, 16 Ohio App.3d 329, 334, 475 N.E.2d 1284 (1984). "The party who failed to comply with the court order to pay support bears the burden of proving an inability to pay by the preponderance of the evidence." *Id.*, citing *Pugh* at 140 and *State ex rel. Cook v. Cook* (1902), 66 Ohio St. 566, 64 N.E. 567, paragraph one of the syllabus*.* "We will not reverse a contempt sanction absent an abuse of discretion." *Id.* at ¶ 26, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). We see no abuse of discretion in the trial court's decision not to impose the three-day jail sentence, since it concluded that Robert was unable to pay his spousal support obligation. Dawn's first assignment of error is overruled.

{¶ 60} Having overruled Dawn's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Priya D. Tamilarasan
Matthew J. Barbato
Hon. Denise L. Cross